IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| ASUS COMPUTER | § | |
| INTERNATIONAL, INC. AND | § | |
| ASUSTEK COMPUTER INC. | § | |
| | § | |
| *Defendants.* | § | |
| | § | |
| | § | |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT



Plaintiff Blue Spike, LLC files this complaint against ASUS Computer International, Inc. and ASUSTeK Computer Inc. (collectively, "ASUS" or the "Defendant") alleging seventeen (17) counts of patent infringement:

**Blue Spike's Packet Transfer Related Patents:**

1.      U.S. Patent 7,287,275, titled "Methods, Systems and Devices for Packet Watermarking and Efficient Provisioning of Bandwidth" (the '275 Patent);

2.      U.S. Patent No. 8,473,746, titled "Methods, Systems and Devices for Packet Watermarking and Efficient Provisioning of Bandwidth" (the '746 Patent);

3.      U.S. Patent No. 8,706,570 "Methods, Systems and Devices for Packet Watermarking and Efficient Provisioning of Bandwidth" (the '570 Patent);

4.      Reissued U.S. Patent No. RE44,222, titled "Methods, Systems and Devices for Packet Watermarking and Efficient Provisioning of Bandwidth" (the '222 Patent);

5.      Reissued U.S. Patent No. RE44,307, titled "Methods, Systems and Devices for Packet Watermarking and Efficient Provisioning of Bandwidth" (the '307 Patent, and collectively with U.S. Patent Nos. 7,287,275; 8,473,746; 8,706,570; RE44,222; and RE44,307 the Packet Transfer Related Patents);

**Blue Spike's Watermarking Patents**:

6.      U.S. Patent No. 5,889,868, titled "Optimization Methods for the Insertion, Protection, and Detection of Digital Watermarks in Digitized Data" (the '868 Patent);

7.      U.S. Patent No. 7,913,087, titled "Optimization Methods for the Insertion, Protection, and Detection of Digital Watermarks in Digitized Data" (the '087 Patent);

8.      U.S. Patent No. 7,953,981, titled "Optimization Methods for the Insertion, Protection, and Detection of Digital Watermarks in Digitized Data" (the '981 Patent);

9.      U.S. Patent No. 8,121,343, titled "Optimization Methods for the Insertion, Protection, and Detection of Digital Watermarks in Digitized Data" (the '343 Patent);

10.      U.S. Patent No. 8,175,330, titled "Optimization Methods for the Insertion, Protection, and Detection of Digital Watermarks in Digitized Data" (the '330 Patent);

11.     U.S. Patent No. 7,770,017, titled "Method and System for Digital Watermarking" (the '017 Patent);

12.     U.S. Patent No. 8,161,286, titled "Method and System for Digital Watermarking" (the '286 Patent);

13.     U.S. Patent No. 8,307,213, titled "Method and System for Digital Watermarking" (the '213 Patent, and collectively with U.S. Patent Nos. 5,889,868; 7,913,087; 7,953,981; 8,121,343; 8,175,330; 7,770,017; and 8,161,286 the Watermarking Patents):

**Blue Spike's Open Access Patents:**

14.     U.S. Patent No. 7,813,506, titled "System and Methods for Permitting Open Access to Data Objects and for Securing Data within the Data Objects" (the '506 Patent);

15.     U.S. Patent No. 8,265,278, titled "System and Methods for Permitting Open Access to Data Objects and for Securing Data within the Data Objects" (the '278 Patent, and collectively with U.S. Patent 7,813,506 the Open Access Patents);

**Blue Spike's Trusted Transactions Patents:**

16.     U.S. Patent No. 7,159,116, titled "Systems, Methods and Devices for Trusted Transactions" (the '116 Patent); and

17.     U.S. Patent No. 8,538,011, titled "Systems, Methods and Devices for Trusted Transactions" (the '011 Patent; collectively with U.S. Patent 7,159,116 the Trusted Transactions Patents; and collectively the "Patents-in-Suit") as follows

## NATURE OF THE SUIT

1.     This is a claim for patent infringement arising under the patent laws of the United

States, Title 35 of the United States Code.

## PARTIES

2.     Plaintiff Blue Spike, LLC is a Texas limited liability company and has its headquarters and principal place of business at 1820 Shiloh Road, Suite 1201-C, Tyler, Texas 75703. Blue Spike, LLC is the assignee of the Patent-in-Suit, and has ownership of all substantial rights in them, including the rights to grant sublicenses, to exclude others from practicing the inventions taught therein, and to sue and obtain damages and other relief for past and future acts of infringement.

3.     On information and belief, ASUS Computer International, Inc. is a company organized and existing under the laws of California, with a principal place of business at 44370 Nobel Drive, Freemont, California 94538. ASUS Computer International, Inc. may be served through its registered agent, CT Corporation System, at 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

4.     On information and belief, ASUSTeK Computer Inc. is a company organized and existing under the laws of Taiwan, with a principal place of business at No. 15, Lide Rd, Beitou District, Taipei City, Taiwan 112. ASUSTeK Computer Inc. can be served via its U.S. subsidiary, ASUS Computer International, Inc.

## JURISDICTION AND VENUE

5.     This lawsuit is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 101 *et seq.* The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a), and 1367.

6.     The Court has personal jurisdiction over Defendant for at least four reasons: (1) Defendant has committed acts of patent infringement and contributed to and induced

acts of patent infringement by others in this District and elsewhere in Texas; (2) Defendant regularly does business or solicits business in the District and in Texas; (3) Defendant engages in other persistent courses of conduct and derives substantial revenue from products and/or services provided to individuals in the District and in Texas; and (4) Defendant has purposefully established substantial, systematic, and continuous contacts with the District and should reasonably expect to be haled into court here.

7.      Specifically, the Accused Products are sold in numerous stores in this District and in Texas (*see*, *e.g.*, Exhibits A, B, & C; *see also* Exhibit D, listing Best Buy USA, OfficeMax, Staples USA, Costco Wholesale, Microsoft, Office Depot, Walmart, and Future Shop as U.S. retail outlets); Defendant has partnered with numerous resellers and distributors in this District and in Texas to sell the Accused Products (*see id*.); the Accused Products are offered for sale to consumers in this District and Texas on the Defendant's resellers' websites (*see id.*); Defendant operates a website that solicits sales of the Accused Products by consumers in this District and Texas (*see* Exhibit E); Defendant offers telephonic and e-mail support services to customers in this District and Texas (*see* Exhibit D); Defendant offers software for download by customers in this District and Texas (*see* Exhibit F); Defendant has walk-in service centers for the Accused Products in the United States (*see* Exhibit G); and Defendant has a registered agent for service in Texas (*see* above). Given these extensive contacts, the Court's exercise of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice.

8.      Thus, the Court's exercise of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice.

9.      Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)–(c) and 1400(b) because Defendant does business in the State of Texas, has committed acts of infringement in Texas and in the District, a substantial part of the events or omissions giving rise to Blue Spike's injury happened in the District, and Defendant is subject to personal jurisdiction in the District.

## FACTUAL BACKGROUND

10.     Protection of intellectual property is a prime concern for creators and publishers of digitized copies of copyrightable works, such as musical recordings, movies, video games, and computer software. Blue Spike founder Scott Moskowitz pioneered—and continues to invent—technology that makes such protection possible.

11.     Moskowitz is a senior member of the Institute of Electrical and Electronics Engineers (IEEE), a member of the Association for Computing Machinery, and the International Society for Optics and Photonics (SPIE). As a senior member of the IEEE, Moskowitz has peer-reviewed numerous conference papers and has submitted his own publications.

12.     Moskowitz is an inventor of more than 100 patents, including forensic watermarking, signal abstracts, data security, software watermarks, product license keys, deep packet inspection, license code for authorized software and bandwidth securitization.

13.     The National Security Agency (NSA) even took interest in his work after he filed one of his early patent applications. The NSA made the application classified under a

"secrecy order" while it investigated his pioneering innovations and their impact on national security.

14.     As an industry trailblazer, Moskowitz has been a public figure and an active author on technologies related to protecting and identifying software and multimedia content. A 1995 *New York Times* article—titled "TECHNOLOGY: DIGITAL COMMERCE; 2 plans for watermarks, which can bind proof of authorship to electronic works"—recognized Moskowitz's company as one of two leading software start-ups in this newly created field. *Forbes* also interviewed Moskowitz as an expert for "Cops Versus Robbers in Cyberspace," a September 9, 1996 article about the emergence of digital watermarking and rights-management technology. He has also testified before the Library of Congress regarding the Digital Millennium Copyright Act.

15.     Moskowitz has spoken to the RSA Data Security Conference, the International Financial Cryptography Association, Digital Distribution of the Music Industry, and many other organizations about the business opportunities that digital watermarking creates. Moskowitz also authored *So This Is Convergence?*, the first book of its kind about secure digital-content management. This book has been downloaded over a million times online and has sold thousands of copies in Japan, where Shogakukan published it under the name *Denshi Skashi*, literally "electronic watermark." Moskowitz was asked to author the introduction to *Multimedia Security Technologies for Digital Rights Management*, a 2006 book explaining digital-rights management. Moskowitz authored a paper for the 2002 International Symposium on Information Technology, titled "What is Acceptable Quality in the Application of Digital Watermarking: Trade-offs of Security,

Robustness and Quality." He also wrote an invited 2003 article titled "Bandwidth as Currency" for the *IEEE Journal*, among other publications.

16.     Moskowitz and Blue Spike continue to invent technologies that protect intellectual property from unintended use or unauthorized copying.

## THE ACCUSED PRODUCTS AND SERVICES

17.     Defendant designs, develops, manufactures and/or provides products and services that employ watermarking technology that infringes one or more claims of the Patents-in-Suit (the "Accused Products"). The Accused Products include, but are not limited to:

a.     **ASUS ROUTERS:** ASUS products incorporating QoS technology (such as Adaptive QoS, SmarQoS, QoS, EZ QoS, and DiffServ), including, but not limited to, its AM200g, DSL-N10, DSL-N12HP, GX-D1241, RT-AC1200HP, RT-AC1750, RT-AC1900, RT-AC1900P, RT-AC3100, RT-AC3200, RT-AC51U, RT-AC52U, RT-AC53, RT-AC53U, RT-AC5300, RT-AC55U, RT-AC56R, RT-AC56S, RT-AC56U, RT-AC66R, RT-AC66U, RT-AC66U BI, RT-AC66W, RT-AC68P, RT-AC68U, RT-AC68W, RT-AC88U, RT-N16, RT-N53, RT-N66R, RT-N66U, and WL5xx model routers; and

b.     **ASUS MOTHERBOARDS:** ASUS products incorporating traffic shaping technology (such as Turbo Lan, cFosSpeed traffic-shaping, GameFirst I, GameFirst II, GameFirst III, GameFirst IV Beta, and GameFirst IV), including, but not limited to, its 970 Pro Gaming/Aura, B150 Pro Gaming/Aura, B150I Pro Gaming/Wifi/Aura, Crossblade Ranger, Crosshair II Formula, Crosshair IV Formula, Crosshair V

Formula, Crosshair V Formula-Z, H170-PRO, H170 PRO GAMING, H170I-PRO, H170I-PLUS, H170M, H170M-PLUS, Maximus Formula, Maximus III Formula, Maximus IV Extreme, Maximus IV Gene, Maximus V Extreme, Maximus V Formula, Maximus V Gene, Maximus VI Extreme, Maximus VI Gene, Maximus VI Formula, Maximus VI Hero, Maximus VI Impact, Maximus VII Formula, Maximus VII Gene, Maximus VII Hero, Maximus VII Impact, Maximus VIII Extreme, Maximus VIII Gene, Maximus VIII Hero, Maximus VIII Impact, Maximus VIII Ranger, ROG Maximus VIII Formula, ROG Maximus VIII Hero Alpha, Rampage II Extreme, Rampage IV Extreme, Rampage IV Formula, Rampage IV Gene, Rampage IV Black Edition, Rampage V Extreme, Rampage V Extreme/U3.1, ROG Rampage V Edition 10, ROG Strix X99 Gaming, Sabertooth P67, Sabertooth X79, Sabertooth X99, Sabertooth Z77, Sabertooth Z87, Sabertooth Z97 Mark 1, Sabertooth Z97 Mark 2, Sabertooth Z97 Mark S, Sabertooth Z170 Mark 1, Sabertooth Z170 S, TUF Sabertooth 990FX R3.0, Striker, Striker Extreme, ThunderboltEX II, X99-A, X99-A/USB 3.1, X99-A II, X99-Deluxe, X99-Deluxe II, X99-Deluxe/USB 3.1, X99-E, X99-E WS/USB 3.1, X99-E-10G WS, X99-M WS, X99-M WS, X99 PRO, X99-PRO/USB 3.1, X99-WS/IPMI, X99-WS/IPMI, Z170 Pro Gaming/Aura, Z170-A, Z170-AR, Z170-Deluxe, Z170-E, Z170-K, Z170M-PLUS, Z170-P, Z170-Premium, Z170-Pro, Z170I Pro Gaming, and Z91-A/USB 3.1 motherboards.

18.   Defendant has not obtained a license for any of Blue Spike's patented technologies.

19.    Yet Defendant's Accused Products are using methods, devices, and systems taught by Blue Spike's Patents-in-Suit.

20.    Although Blue Spike is not obligated to identify specific claims or claim elements in its complaint, it does so below for Defendant's benefit. *See Rmail Ltd. v. Right Signature, LLC*, 2:11-CV-300-JRG, 2012 WL 2595305, at *2 (E.D. Tex. July 5, 2012) ("Plaintiffs are not required to identify specific claims or claim elements at this stage of the litigation.").

## COUNT 1:
## INFRINGEMENT OF U.S. PATENT 7,287,275

21.    Blue Spike incorporates by reference the allegations in the paragraphs above.

22.    The '275 Patent is valid, enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

23.    Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '275 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

24.    Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '275 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '275 Patent. Specifically, Defendant imports the Accused Devices into the United States; has partnered with numerous resellers to offer for sale and sell the Accused Devices in the United States, in numerous stores and websites; Defendant generates revenue from sales of the Accused Products to U.S. customers in said stores and via said

websites (*see*, *e.g.*, Exhibits A, B, & C; *see also* Exhibit D, listing Best Buy USA, OfficeMax, Staples USA, Costco Wholesale, Microsoft, Office Depot, Walmart, and Future Shop as U.S. retail outlets); and has attended trade shows in the United States where it has demonstrated the Accused Products (*see*, *e.g.*, Exhibit H).

25.    The Accused Products infringe claims of the '275 Patent, such as Claim 1 which teaches

> A method for transmitting a stream of data, comprising:
> receiving a stream of data;
> organizing the stream of data into a plurality of packets;
> generating a packet watermark associated with the stream of data wherein the packet watermark enables identification of at least one of the plurality of packets;
> combining the packet watermark with each of the plurality of packets to form watermarked packets; and
> transmitting at least one of the watermarked packets across a network.

Defendant's Accused Products transmit data (*a method for transmitting a stream of data*). *See* Exhibit J at 6 (advertising the router's four separate transmitting antennae). Before transmitting data, the Accused Products generate a watermark identifying a packet and place the watermark in the packet (*generating a watermark associated with the stream of data wherein the packet watermark enables identification; combining the packet watermark with each of the plurality of packets to form watermarked packets*). *See* Exhibit K (indicating the inclusion of "Packet level QoS classification rules" and "DiffServ DSCP marking"); Exhibit L (noting "Diffserv relies on a mechanism to *classify* and *mark* packets as belonging to a specific class"); *see also* Exhibit T (advertising the Accused Products' incorporation of cFosSpeed technology); Exhibit O; Exhibit U (explaining that cFosSpeed technology incorporated in some or all of the Accused

Products "can label each packet with a certain value (called Differentiated Services Code Point, DSCP) and that value is stored inside of the packet").

26.    Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '275 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '275 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '275 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '275 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc*., No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (*See* Exhibit D.) Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '275 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to

infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '275 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '275 Patent under 35 U.S.C. § 271.

27.    Defendant's acts of infringement of the '275 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '275 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

28.    On information and belief, the infringement of the '275 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '275 Patent, including but not limited to at least one or more of the following:

    a.    In the course of its due diligence and freedom to operate analysis;

    b.    Due diligence in relation to its prior litigation with Blue Spike; and

    c.    The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '275 Patent by operation of law.

## COUNT 2:
## INFRINGEMENT OF U.S. PATENT 8,473,746

29.    Blue Spike incorporates by reference the allegations in the paragraphs above.

30.    The '746 Patent is valid, enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

31.     Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '746 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

32.     Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '746 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '746 Patent. Specifically, Defendant imports the Accused Devices into the United States; has partnered with numerous resellers to offer for sale and sell the Accused Devices in the United States, in numerous stores and websites; Defendant generates revenue from sales of the Accused Products to U.S. customers in said stores and via said websites (*see*, *e.g.*, Exhibits A, B, & C; *see also* Exhibit D, listing Best Buy USA, OfficeMax, Staples USA, Costco Wholesale, Microsoft, Office Depot, Walmart, and Future Shop as U.S. retail outlets); and has attended trade shows in the United States where it has demonstrated the Accused Products (*see*, *e.g.*, Exhibit H).

33.     The Accused Products infringe claims of the '746 Patent, such as Claim 9 which teaches

> A method for generating a watermarked packet, comprising:
> > a processor applying an algorithm to at least (1) a packet watermark and (2) packet content, thereby generating a WID (Watermark Identification);
> > wherein said packet content is less than all data of a data object;
> > a processor generating a watermarked packet comprising said packet watermark and at least some of said packet content.

The Accused Products generate a watermark identifying a packet and place the watermark in the packet (*generating a watermark associated with the stream of data wherein the packet watermark enables identification; combining the packet watermark with each of the plurality of packets to form watermarked packets*). *See* Exhibit K (indicating the inclusion of "Packet level QoS classification rules" and "DiffServ DSCP marking"); Exhibit L (noting "Diffserv relies on a mechanism to *classify* and *mark* packets as belonging to a specific class"); *see also* Exhibit T (advertising the Accused Products' incorporation of cFosSpeed technology); Exhibit O; Exhibit U (explaining that cFosSpeed technology incorporated in some or all of the Accused Products "can label each packet with a certain value (called Differentiated Services Code Point, DSCP) and that value is stored inside of the packet"). The Accused Products apply an algorithm to a packet to determine its priority (*applying an algorithm to packet content*) then apply an algorithm based on those results on a watermark (*apply an algorithm to a watermark*) to identify the packet (*generating a WID (Watermark Identification)*). *See* Exhibit K at 72, 77, and 129; Exhibit L (explaining how DiffServ marks packets).

34. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '746 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '746 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '746 Patent. By making, using, importing offering for

sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '746 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig*., 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc*., No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (*See* Exhibit D.) Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '746 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '746 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '746 Patent under 35 U.S.C. § 271.

35.    Defendant's acts of infringement of the '746 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the

'746 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

36.   On information and belief, the infringement of the '746 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '746 Patent, including but not limited to at least one or more of the following:

    a.   In the course of its due diligence and freedom to operate analysis;

    b.   Due diligence in relation to its prior litigation with Blue Spike; and

    c.   The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '746 Patent by operation of law.

**COUNT 3:**

**INFRINGEMENT OF U.S. PATENT 8,706,570**

37.   Blue Spike incorporates by reference the allegations in the paragraphs above.

38.   The '570 Patent is valid, enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

39.   Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '570 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

40.   Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '570 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '570 Patent. Specifically, Defendant imports the Accused Products into the United

States; has partnered with numerous resellers to offer for sale and sell the Accused Devices in the United States, in numerous stores and websites; Defendant generates revenue from sales of the Accused Products to U.S. customers in said stores and via said websites (*see*, *e.g.*, Exhibits A, B, & C; *see also* Exhibit D, listing Best Buy USA, OfficeMax, Staples USA, Costco Wholesale, Microsoft, Office Depot, Walmart, and Future Shop as U.S. retail outlets); and has attended trade shows in the United States where it has demonstrated the Accused Products (*see*, *e.g.*, Exhibit H).

41.    The Accused Products infringe claims of the '570 Patent, such as Claim 1 which teaches

> A computerized system for creating a medium of exchange, the system comprising:
> a processor;
> at least one data storage medium for storing data in non transient form, wherein data stored in said at least one data storage medium comprises computer code and a bandwidth rights certificate;
> wherein said bandwidth rights certificate stores routing information comprising (1) router data, wherein said router data comprises at least authorization indicating authorization for at least one router and priority data indicating priority for at least one router and (2) certificate validity period;
> wherein said computerized system is designed to use said computer code to organize data into packets;
> wherein said computerized system is designed to use said computer code to combine said bandwidth rights certificate and said packets into a data transmission, for transmission across a network;
> a router, wherein said router is configured to use certificate validity period of said bandwidth rights certificate to determine whether to use said router data to determine at least one of whether to route said data transmission and how to prioritize routing said data transmission.

The Accused Products, specifically the ASUS ROUTERS and ASUS products incorporating cFosSpeed technology, are designed to interact with each other and exchange information and priority rights for packets (*a computerized system for creating a medium of exchange*). *See* Exhibit P (advertising cFosSpeed's ability to interact with other similar systems and "broadcast how much data it has sent and received to all other cFosSpeed," allowing the devices to "adjust their speeds according to the sum of all traffic, not just their own share of it."). This exchange and adjustment allows the devices to authorize bandwidth based on "the sum of all traffic, not just their own share of it" (*a bandwidth rights certificate*; *router data comprising at least authorization indicating authorization for at least one router and priority data*"). *See* Exhibit P. The Accused Products are then able to "improve the quality of their traffic shaping" (*determine how to prioritize routing said data*). *See* Exhibit P.

42.   Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '570 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '570 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '570 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '570 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the

use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at \*3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (*See* Exhibit D.) Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '570 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '570 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '570 Patent under 35 U.S.C. § 271.

43.    Defendant's acts of infringement of the '570 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '570 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

44.     On information and belief, the infringement of the '570 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '570 Patent, including but not limited to at least one or more of the following:

    a.     In the course of its due diligence and freedom to operate analysis;

    b.     Due diligence in relation to its prior litigation with Blue Spike; and

    c.     The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '570 Patent by operation of law.

## COUNT 4:
## INFRINGEMENT OF U.S. PATENT RE44,222

45.     Blue Spike incorporates by reference the allegations in the paragraphs above.

46.     The '222 Patent is valid, enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

47.     Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '222 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

48.     Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '222 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '222 Patent. Specifically, Defendant imports the Accused Devices into the United States; has partnered with numerous resellers to offer for sale and sell the Accused Devices in the United States, in numerous stores and websites; Defendant generates

revenue from sales of the Accused Products to U.S. customers in said stores and via said websites (*see*, *e.g.*, Exhibits A, B, & C; *see also* Exhibit D, listing Best Buy USA, OfficeMax, Staples USA, Costco Wholesale, Microsoft, Office Depot, Walmart, and Future Shop as U.S. retail outlets); and has attended trade shows in the United States where it has demonstrated the Accused Products (*see*, *e.g.*, Exhibit H).

49.     The Accused Products infringe claims of the '222 Patent, such as Claim 12 which teaches

> A system for provisioning content, comprising:
> a processor to receive content and to organize the content into a plurality of packets;
> a generator to generate at least one packet watermark associated with the content;
> a packager to combine the generated packet watermark with at least one of the plurality of packets to form watermarked packets; and
> a transmitter to transmit at least one of the watermarked packets across a network.

Defendant's Accused Products transmit the resulting packets (*a transmitter to transmit at least one of the watermarked packets across a network*). *See* Exhibit J at 6 (advertising the router's four separate transmitting antennae).

50.     Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '222 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '222 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '222 Patent.  By making, using, importing offering for

sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '222 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig*., 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc*., No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (*See* Exhibit D.) Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '222 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '222 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '222 Patent under 35 U.S.C. § 271.

51.    Defendant's acts of infringement of the '222 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the

'222 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

52.     On information and belief, the infringement of the '222 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '222 Patent, including but not limited to at least one or more of the following:

      a.     In the course of its due diligence and freedom to operate analysis;

      b.     Due diligence in relation to its prior litigation with Blue Spike; and

      c.     The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '222 Patent by operation of law.

## COUNT 5:
## INFRINGEMENT OF U.S. PATENT RE44,307

53.     Blue Spike incorporates by reference the allegations in the paragraphs above.

54.     The '307 Patent is valid, enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

55.     Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '307 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

56.     Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '307 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '307 Patent. Specifically, Defendant imports the Accused Devices into the United

States; has partnered with numerous resellers to offer for sale and sell the Accused Devices in the United States, in numerous stores and websites; Defendant generates revenue from sales of the Accused Products to U.S. customers in said stores and via said websites (*see*, *e.g.*, Exhibits A, B, & C; *see also* Exhibit D, listing Best Buy USA, OfficeMax, Staples USA, Costco Wholesale, Microsoft, Office Depot, Walmart, and Future Shop as U.S. retail outlets); and has attended trade shows in the United States where it has demonstrated the Accused Products (*see*, *e.g.*, Exhibit H).

57.     The Accused Products infringe claims of the '307 Patent, such as Claim 1 which teaches

> A process for provisioning a stream of data, comprising:
>> receiving a stream of data;
>> organizing the stream of data into a packet flow comprising a plurality of packets;
>> generating, using a processor, a packet watermark associated with the packet flow wherein the packet watermark enables discrimination between packet flows;
>> combining, using a processor, the packet watermark with each of the plurality of packets to form watermarked packets; and
>> provisioning at least one of the watermarked packets across a network.

The Accused Products generate a watermark identifying a packet and place the watermark in the packet (*a generator to generate at least one packet watermark associated with the content; a packager to combine the generated packet watermark with a packet*). *See* Exhibit K (indicating the inclusion of "Packet level QoS classification rules" and "DiffServ DSCP marking"); Exhibit L (noting "Diffserv relies on a mechanism to *classify* and *mark* packets as belonging to a specific class"); *see also* Exhibit T (advertising the Accused Products' incorporation of cFosSpeed technology); Exhibit O; Exhibit U (explaining that cFosSpeed technology incorporated in some or all of the

Accused Products "can label each packet with a certain value (called Differentiated Services Code Point, DSCP) and that value is stored inside of the packet"). This packet watermark is intended to differentiate packets (hence the term "Differentiated Services Code Point") generated by different sources or traveling different routes (*the packet watermark enables discrimination between packet flows*). *See* Exhibit L. Defendant's Accused Products transmit the resulting packets (*a transmitter to transmit at least one of the watermarked packets across a network*). *See* Exhibit J at 6 (advertising the router's four separate transmitting antennae).

58.   Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '307 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '307 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '307 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '307 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig*., 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc*., No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of

its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (*See* Exhibit D.) Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '307 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '307 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '307 Patent under 35 U.S.C. § 271.

59.    Defendant's acts of infringement of the '307 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '307 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

60.    On information and belief, the infringement of the '307 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '307 Patent, including but not limited to at least one or more of the following:

a.    In the course of its due diligence and freedom to operate analysis;

b.    Due diligence in relation to its prior litigation with Blue Spike; and

c.    The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '307 Patent by operation of law.

## COUNT 6:
## INFRINGEMENT OF U.S. PATENT 5,889,868

61.   Blue Spike incorporates by reference the allegations in the paragraphs above.

62.   The '868 Patent is valid, enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

63.   Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '868 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

64.   Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '868 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '868 Patent. Specifically, Defendant imports the Accused Devices into the United States; has partnered with numerous resellers to offer for sale and sell the Accused Devices in the United States, in numerous stores and websites; Defendant generates revenue from sales of the Accused Products to U.S. customers in said stores and via said websites (*see*, *e.g.*, Exhibits A, B, & C; *see also* Exhibit D, listing Best Buy USA, OfficeMax, Staples USA, Costco Wholesale, Microsoft, Office Depot, Walmart, and Future Shop as U.S. retail outlets); and has attended trade shows in the United States where it has demonstrated the Accused Products (*see*, *e.g.*, Exhibit H).

65.     The Accused Products infringe claims of the '868 Patent, such as Claim 9 which teaches

> A method of pre-processing a watermark message certificate comprising determining an exact length of the watermark message as it will be encoded.

The Accused Products generate a watermark identifying a packet and place the watermark in the packet. *See* Exhibit K (indicating the inclusion of "Packet level QoS classification rules" and "DiffServ DSCP marking"); Exhibit L (noting "Diffserv relies on a mechanism to *classify* and *mark* packets as belonging to a specific class"); *see also* Exhibit T (advertising the Accused Products' incorporation of cFosSpeed technology); Exhibit O; Exhibit U (explaining that cFosSpeed technology incorporated in some or all of the Accused Products "can label each packet with a certain value (called Differentiated Services Code Point, DSCP) and that value is stored inside of the packet"). The Accused Products place a DSCP marker of a predetermined length (a byte) into the packet (*determining an exact length of the watermark message*). *See* Exhibit K at 77 ("This screen creates a traffic class rule to classify the upstream traffic, assign queuing priority and optionally overwrite the IP header DSCP byte.").

66.   Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '868 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '868 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '868 Patent.  By making, using, importing offering for

sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '868 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig*., 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc*., No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (*See* Exhibit D.) Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '868 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '868 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '868 Patent under 35 U.S.C. § 271.

67.    Defendant's acts of infringement of the '868 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the

'868 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

68.    On information and belief, the infringement of the '868 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '868 Patent, including but not limited to at least one or more of the following:

   a.    In the course of its due diligence and freedom to operate analysis;

   b.    Due diligence in relation to its prior litigation with Blue Spike; and

   c.    The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '868 Patent by operation of law.

## COUNT 7:
## INFRINGEMENT OF U.S. PATENT 7,913,087

69.    Blue Spike incorporates by reference the allegations in the paragraphs above.

70.    The '087 Patent is valid, enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

71.    Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '087 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

72.    Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '087 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '087 Patent. Specifically, Defendant imports the Accused Devices into the United

States; has partnered with numerous resellers to offer for sale and sell the Accused Devices in the United States, in numerous stores and websites; Defendant generates revenue from sales of the Accused Products to U.S. customers in said stores and via said websites (*see*, *e.g.*, Exhibits A, B, & C; *see also* Exhibit D, listing Best Buy USA, OfficeMax, Staples USA, Costco Wholesale, Microsoft, Office Depot, Walmart, and Future Shop as U.S. retail outlets); and has attended trade shows in the United States where it has demonstrated the Accused Products (*see*, *e.g.*, Exhibit H).

73.     The Accused Products infringe claims of the '087 Patent, such as Claim 6 which teaches

> A process for decoding a plurality of digital watermarks using an encoding level and a key, comprising:
>> providing a digital signal encoded with a plurality of digital watermarks;
>> providing at least one key for decoding digital watermarks;
>> determining an encoding level; and
>> decoding at least two of the plurality of digital watermarks encoded in the digital signal at substantially the same encoding level based on the at least one key.

The Accused Products generate a watermark identifying a packet and place the watermark in the packet (*providing a digital signal encoded with a plurality of digital watermarks*). *See* Exhibit K (indicating the inclusion of "Packet level QoS classification rules" and "DiffServ DSCP marking"); Exhibit L (noting "Diffserv relies on a mechanism to *classify* and *mark* packets as belonging to a specific class"); *see also* Exhibit T (advertising the Accused Products' incorporation of cFosSpeed technology); Exhibit O; Exhibit U (explaining that cFosSpeed technology incorporated in some or all of the Accused Products "can label each packet with a certain value (called Differentiated

Services Code Point, DSCP) and that value is stored inside of the packet"). The Accused Products place a DSCP marker of a predetermined length (a byte) into the packet (*determining an encoding level*). *See* Exhibit K at 77 ("This screen creates a traffic class rule to classify the upstream traffic, assign queuing priority and optionally overwrite the IP header DSCP byte."). The Accused Products then decode the watermarks when they are received.

74.     Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '087 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '087 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '087 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '087 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (*See* Exhibit D.)

Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '868 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '087 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '087 Patent under 35 U.S.C. § 271.

75.    Defendant's acts of infringement of the '087 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '868 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

76.    On information and belief, the infringement of the '087 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '087 Patent, including but not limited to at least one or more of the following:

    a.    In the course of its due diligence and freedom to operate analysis;

    b.    Due diligence in relation to its prior litigation with Blue Spike; and

    c.    The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '087 Patent by operation of law.

**COUNT 8:**

**INFRINGEMENT OF U.S. PATENT 7,953,981**

77.     Blue Spike incorporates by reference the allegations in the paragraphs above.

78.     The '981 Patent is valid, enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

79.     Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '981 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

80.     Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '981 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '981 Patent. Specifically, Defendant imports the Accused Devices into the United States; has partnered with numerous resellers to offer for sale and sell the Accused Devices in the United States, in numerous stores and websites; Defendant generates revenue from sales of the Accused Products to U.S. customers in said stores and via said websites (*see*, *e.g.*, Exhibits A, B, & C; *see also* Exhibit D, listing Best Buy USA, OfficeMax, Staples USA, Costco Wholesale, Microsoft, Office Depot, Walmart, and Future Shop as U.S. retail outlets); and has attended trade shows in the United States where it has demonstrated the Accused Products (*see*, *e.g.*, Exhibit H).

81.     The Accused Products infringe claims of the '981 Patent, such as Claim 22 which teaches

A digital watermarking system, comprising:

a receiver for receiving a signal;

an analyzer for determining locations in the signal comprising candidate bits; and

a watermark message generator for generating at least one watermark message wherein a generated watermark message is associated with at least one candidate bit determined in the analyzing step.

Defendant's Accused Products transmit data (*a digital watermarking system*). *See* Exhibit J at 6 (advertising the router's four separate transmitting and receiving antennae). The Accused Products analyze packets and determine where the watermark will be placed. (*an analyzer for determining locations in the signal comprising candidate bits*). *See* Exhibit K at 77 ("This screen creates a traffic class rule to classify the upstream traffic, assign queuing priority and optionally overwrite the IP header DSCP byte."). The Accused Products generate a watermark identifying a packet and place the watermark in the packet (*a watermark message generator*). *See* Exhibit K (indicating the inclusion of "Packet level QoS classification rules" and "DiffServ DSCP marking"); Exhibit L (noting "Diffserv relies on a mechanism to *classify* and *mark* packets as belonging to a specific class"); *see also* Exhibit T (advertising the Accused Products' incorporation of cFosSpeed technology); Exhibit O; Exhibit U (explaining that cFosSpeed technology incorporated in some or all of the Accused Products "can label each packet with a certain value (called Differentiated Services Code Point, DSCP) and that value is stored inside of the packet").

82.     Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '981 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one

or more claims of the '981 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '981 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '981 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig*., 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc*., No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (*See* Exhibit D.) Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '981 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '981 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '981 Patent under 35 U.S.C. § 271.

83.    Defendant's acts of infringement of the '981 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a

result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to

35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the

'981 Patent will continue to damage Blue Spike, causing it irreparable harm, for which

there is no adequate remedy at law, warranting an injunction from the Court.

84.     On information and belief, the infringement of the '981 Patent by Defendant has

been willful and continues to be willful. Defendant had knowledge of the '981 Patent,

including but not limited to at least one or more of the following:

     a.     In the course of its due diligence and freedom to operate analysis;

     b.     Due diligence in relation to its prior litigation with Blue Spike; and

     c.     The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '981

Patent by operation of law.

**COUNT 9:**

**INFRINGEMENT OF U.S. PATENT 8,121,343**

85.     Blue Spike incorporates by reference the allegations in the paragraphs above.

86.     The '343 Patent is valid, enforceable, and was duly and legally issued from the

United States Patent and Trademark Office.

87.     Without a license or permission from Blue Spike, Defendant has infringed and

continue to infringe on one or more claims of the '343 Patent—directly, contributorily, or

by inducement—by importing, making, using, offering for sale, or selling products and

devices that embody the patented invention, including, without limitation, one or more of

the Accused Products, in violation of 35 U.S.C. § 271.

88.     Defendant has been and now is directly infringing by, among other things,

practicing all the steps of the '343 Patent and/or directing, controlling, and obtaining

benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '343 Patent. Specifically, Defendant imports the Accused Devices into the United States; has partnered with numerous resellers to offer for sale and sell the Accused Devices in the United States, in numerous stores and websites; Defendant generates revenue from sales of the Accused Products to U.S. customers in said stores and via said websites (*see*, *e.g.*, Exhibits A, B, & C; *see also* Exhibit D, listing Best Buy USA, OfficeMax, Staples USA, Costco Wholesale, Microsoft, Office Depot, Walmart, and Future Shop as U.S. retail outlets); and has attended trade shows in the United States where it has demonstrated the Accused Products (*see*, *e.g.*, Exhibit H).

89.     The Accused Products infringe claims of the '343 Patent, such as Claim 1 which teaches

> A method of detecting a watermark message comprising:
>> identifying, with a processor, signal characteristics suitable for embedding one or more bits of watermark message within a signal;
>> using a watermarking key to detect said watermark message from the identified signal characteristics.

The Accused Products analyze packets and determine where the watermark will be placed. (*identifying signal characteristics suitable for embedding one or more bits of a watermark message*). *See* Exhibit K at 77 ("This screen creates a traffic class rule to classify the upstream traffic, assign queuing priority and optionally overwrite the IP header DSCP byte."). The Accused Products generate a watermark identifying a packet and place the watermark in the packet. *See* Exhibit K (indicating the inclusion of "Packet level QoS classification rules" and "DiffServ DSCP marking"); Exhibit L (noting "Diffserv relies on a mechanism to *classify* and *mark* packets as belonging to a specific

class"); *see also* Exhibit T (advertising the Accused Products' incorporation of cFosSpeed technology); Exhibit O; Exhibit U (explaining that cFosSpeed technology incorporated in some or all of the Accused Products "can label each packet with a certain value (called Differentiated Services Code Point, DSCP) and that value is stored inside of the packet"). The Accused Products identify where the watermark has been placed (*detect said watermark message*). *See* Exhibit K.

90. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '343 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '343 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '343 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '343 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (*See* Exhibit D.)

Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '343 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '343 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '343 Patent under 35 U.S.C. § 271.

91.   Defendant's acts of infringement of the '343 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '343 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

92.   On information and belief, the infringement of the '343 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '343 Patent, including but not limited to at least one or more of the following:

    a.   In the course of its due diligence and freedom to operate analysis;

    b.   Due diligence in relation to its prior litigation with Blue Spike; and

    c.   The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '343 Patent by operation of law.

## COUNT 10:

## INFRINGEMENT OF U.S. PATENT 8,175,330

93.   Blue Spike incorporates by reference the allegations in the paragraphs above.

94.   The '330 Patent is valid, enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

95.   Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '330 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

96.   Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '330 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '330 Patent. Specifically, Defendant imports the Accused Devices into the United States; has partnered with numerous resellers to offer for sale and sell the Accused Devices in the United States, in numerous stores and websites; Defendant generates revenue from sales of the Accused Products to U.S. customers in said stores and via said websites (*see*, *e.g.*, Exhibits A, B, & C; *see also* Exhibit D, listing Best Buy USA, OfficeMax, Staples USA, Costco Wholesale, Microsoft, Office Depot, Walmart, and Future Shop as U.S. retail outlets); and has attended trade shows in the United States where it has demonstrated the Accused Products (*see*, *e.g.*, Exhibit H).

97.   The Accused Products infringe claims of the '330 Patent, such as Claim 2 which teaches

> A method for digital watermarking a digital signal, comprising:
>> identifying, using a processor of a computer, locations within a digital signal which are suitable for embedding one or more bits of a watermark message; and
>> embedding, using said computer, said watermark message into said digital signal at said locations.

The Accused Products analyze packets and determine where the watermark will be placed (*identifying signal characteristics suitable for embedding one or more bits of a watermark message*). *See* Exhibit K at 77 ("This screen creates a traffic class rule to classify the upstream traffic, assign queuing priority and optionally overwrite the IP header DSCP byte."). The Accused Products generate a watermark identifying a packet and place the watermark in the packet (*embedding said watermark message*). *See* Exhibit K (indicating the inclusion of "Packet level QoS classification rules" and "DiffServ DSCP marking"); Exhibit L (noting "Diffserv relies on a mechanism to *classify* and *mark* packets as belonging to a specific class"); *see also* Exhibit T (advertising the Accused Products' incorporation of cFosSpeed technology); Exhibit O; Exhibit U (explaining that cFosSpeed technology incorporated in some or all of the Accused Products "can label each packet with a certain value (called Differentiated Services Code Point, DSCP) and that value is stored inside of the packet").

98.   Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '330 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '330 Patent. Such products include, without limitation, one or more

of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '330 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '330 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (*See* Exhibit D.) Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '330 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '330 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '330 Patent under 35 U.S.C. § 271.

99.   Defendant's acts of infringement of the '330 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to

35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '330 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

100. On information and belief, the infringement of the '330 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '330 Patent, including but not limited to at least one or more of the following:

    a.    In the course of its due diligence and freedom to operate analysis;

    b.    Due diligence in relation to its prior litigation with Blue Spike; and

    c.    The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '330 Patent by operation of law.

## COUNT 11:
## INFRINGEMENT OF U.S. PATENT 7,770,017

101. Blue Spike incorporates by reference the allegations in the paragraphs above.

102. The '017 Patent is valid, enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

103. Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '017 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

104. Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '017 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps

of the '017 Patent. Specifically, Defendant imports the Accused Devices into the United States; has partnered with numerous resellers to offer for sale and sell the Accused Devices in the United States, in numerous stores and websites; Defendant generates revenue from sales of the Accused Products to U.S. customers in said stores and via said websites (*see*, *e.g.*, Exhibits A, B, & C; *see also* Exhibit D, listing Best Buy USA, OfficeMax, Staples USA, Costco Wholesale, Microsoft, Office Depot, Walmart, and Future Shop as U.S. retail outlets); and has attended trade shows in the United States where it has demonstrated the Accused Products (*see*, *e.g.*, Exhibit H).

105.    The Accused Products infringe claims of the '017 Patent, such as Claim 1 which teaches

> An article of manufacture for authorized distribution of multimedia content comprising a non-transitory machine-readable medium having stored thereon instructions adapted to be executed by a processor, the instructions which, when executed results in the processing comprising:
>> receiving at least one copy of content to be imperceptibly encoded with at least one digital watermark;
>> encoding the digital watermark into one or more locations in the content utilizing a key associated with a plurality of functions describing how the digital watermark is to be encoded and
>> detecting at least one digital watermark using the key.

Defendant's Accused Products transmit data (*receiving at least one copy*). *See* Exhibit J at 6 (advertising the router's four separate transmitting and receiving antennae). The Accused Products analyze packets and determine where the watermark will be placed (*encoding the digital watermark*). *See* Exhibit K at 77 ("This screen creates a traffic class rule to classify the upstream traffic, assign queuing priority and optionally overwrite the

IP header DSCP byte."). The Accused Products generate a watermark identifying a packet and place the watermark in the packet. *See* Exhibit K (indicating the inclusion of "Packet level QoS classification rules" and "DiffServ DSCP marking"); Exhibit L (noting "Diffserv relies on a mechanism to *classify* and *mark* packets as belonging to a specific class"); *see also* Exhibit T (advertising the Accused Products' incorporation of cFosSpeed technology); Exhibit O; Exhibit U (explaining that cFosSpeed technology incorporated in some or all of the Accused Products "can label each packet with a certain value (called Differentiated Services Code Point, DSCP) and that value is stored inside of the packet"). The Accused Products identify where the watermark has been placed (*detecting at least one watermark*). *See* Exhibit K.

106. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '017 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '017 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '017 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '017 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig*., 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater*

*Partners of Tex. LLC v. AT & T, Inc*., No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (*See* Exhibit D.) Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '017 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '017 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '017 Patent under 35 U.S.C. § 271.

107. Defendant's acts of infringement of the '017 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '017 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

108. On information and belief, the infringement of the '017 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '017 Patent, including but not limited to at least one or more of the following:

    a.    In the course of its due diligence and freedom to operate analysis;

b.    Due diligence in relation to its prior litigation with Blue Spike; and

c.    The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '017 Patent by operation of law.

## COUNT 12:
## INFRINGEMENT OF U.S. PATENT 8,161,286

109. Blue Spike incorporates by reference the allegations in the paragraphs above.

110. The '286 Patent is valid, enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

111. Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '286 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

112. Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '286 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '286 Patent. Specifically, Defendant imports the Accused Devices into the United States; has partnered with numerous resellers to offer for sale and sell the Accused Devices in the United States, in numerous stores and websites; Defendant generates revenue from sales of the Accused Products to U.S. customers in said stores and via said websites (*see*, *e.g.*, Exhibits A, B, & C; *see also* Exhibit D, listing Best Buy USA, OfficeMax, Staples USA, Costco Wholesale, Microsoft, Office Depot, Walmart, and

Future Shop as U.S. retail outlets); and has attended trade shows in the United States where it has demonstrated the Accused Products (*see*, *e.g.*, Exhibit H).

113.    The Accused Products infringe claims of the '286 Patent, such as Claim 1 which teaches

> A method for decoding digital watermarks, comprising:
> receiving a content signal encoded with a digital watermark; and
> decoding, said digital watermark from said content signal using a key that comprises information describing where in the content signal said digital watermark is encoded.

Defendant's Accused Products transmit and receive data (*receiving a content signal*). *See* Exhibit J at 6 (advertising the router's four separate transmitting and receiving antennae).

Defendant's Accused Products utilize a key that describes where the watermark is encoded (*decoding said digital watermark using a key that comprises information describing where in the content signal said digital watermark is encoded*). *See* Exhibit K at 77 ("This screen creates a traffic class rule to classify the upstream traffic, assign queuing priority and optionally overwrite the IP header DSCP byte.").

114. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '286 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '286 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '286 Patent.  By making, using, importing offering for

sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '286 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (*See* Exhibit D.) Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '286 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '286 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '286 Patent under 35 U.S.C. § 271.

115.  Defendant's acts of infringement of the '286 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the

'286 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

116.   On information and belief, the infringement of the '286 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '286 Patent, including but not limited to at least one or more of the following:

      a.      In the course of its due diligence and freedom to operate analysis;

      b.      Due diligence in relation to its prior litigation with Blue Spike; and

      c.      The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '286 Patent by operation of law.

## COUNT 13:
## INFRINGEMENT OF U.S. PATENT 8,307,213

117.   Blue Spike incorporates by reference the allegations in the paragraphs above.

118.   The '213 Patent is valid, enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

119.   Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '213 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

120.   Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '213 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '213 Patent. Specifically, Defendant imports the Accused Devices into the United

States; has partnered with numerous resellers to offer for sale and sell the Accused

Devices in the United States, in numerous stores and websites; Defendant generates

revenue from sales of the Accused Products to U.S. customers in said stores and via said

websites (*see*, *e.g.*, Exhibits A, B, & C; *see also* Exhibit D, listing Best Buy USA,

OfficeMax, Staples USA, Costco Wholesale, Microsoft, Office Depot, Walmart, and

Future Shop as U.S. retail outlets); and has attended trade shows in the United States

where it has demonstrated the Accused Products (*see*, *e.g.*, Exhibit H).

121.    The Accused Products infringe claims of the '213 Patent, such as Claim 1 which

teaches

> An article of manufacture comprising a
> nontransitory medium having stored thereon
> instructions adapted to be executed by a processor,
> the instructions which, when executed, result in the
> process comprising: receiving content to be
> watermarked and at least one digital watermark; and
> watermarking the content with the received at least
> one digital watermark using a key comprising
> information describing where in the content the
> received at least one digital watermark is to be
> encoded.

Defendant's Accused Products transmit and receive data (*receiving content to be*

*watermarked*). *See* Exhibit J at 6 (advertising the router's four separate transmitting and

receiving antennae). Defendant's Accused Products utilize a key that describes where the

watermark is encoded (*watermarking the content*). *See* Exhibit K at 77 ("This screen

creates a traffic class rule to classify the upstream traffic, assign queuing priority and

optionally overwrite the IP header DSCP byte."). Defendant has been and now is

indirectly infringing by way of inducing infringement by others and/or contributing to the

infringement by others of the '213 Patent in the State of Texas, in this judicial district,

and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '213 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '213 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '213 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (*See* Exhibit D.)  Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '213 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '213 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '213 Patent under 35 U.S.C. § 271.

122.  Defendant's acts of infringement of the '213 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '213 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

123.  On information and belief, the infringement of the '213 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '213 Patent, including but not limited to at least one or more of the following:

    a.    In the course of its due diligence and freedom to operate analysis;

    b.    Due diligence in relation to its prior litigation with Blue Spike; and

    c.    The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '213 Patent by operation of law.

## COUNT 14:
## INFRINGEMENT OF U.S. PATENT 7,813,506

124.  Blue Spike incorporates by reference the allegations in the paragraphs above.

125.  The '506 Patent is valid, enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

126.  Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '506 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

127.    Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '506 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '506 Patent. Specifically, Defendant imports the Accused Devices into the United States; has partnered with numerous resellers to offer for sale and sell the Accused Devices in the United States, in numerous stores and websites; Defendant generates revenue from sales of the Accused Products to U.S. customers in said stores and via said websites (*see*, *e.g.*, Exhibits A, B, & C; *see also* Exhibit D, listing Best Buy USA, OfficeMax, Staples USA, Costco Wholesale, Microsoft, Office Depot, Walmart, and Future Shop as U.S. retail outlets); and has attended trade shows in the United States where it has demonstrated the Accused Products (*see*, *e.g.*, Exhibit H).

128.    The Accused Products infringe claims of the '506 Patent, such as Claim 11 which teaches

> A device for creating differential access to an accessible data object, comprising:
> > a receiver for receiving a data object comprising digital data and file format information;
> > an encoder for encoding independent data into the data object;
> > a scrambler for manipulating the data object based on at least one signal characteristic of the data object wherein the scrambling is performed until at least one signal quality threshold is created for the data object; and
> > a transmitter for transmitting the perceptibly manipulated data object wherein the manipulated data object is associated with at least one selected from the group comprising: a digital watermark; a key; a device; a subscriber; a user; a payment facility;
> > a distribution channel; authentication information; or combinations thereof.

The Accused Products generate a watermark identifying a packet and place the watermark in the packet for the purpose of differentiating it from other packets (hence the term "Differentiated Services Code Point"). *See* Exhibit L. Defendant's Accused Products receive data (*a receiver for receiving*). *See* Exhibit J at 6 (advertising the router's four separate transmitting and receiving antennae). Before transmitting data, the Accused Products generate a watermark identifying a packet and place the watermark in the packet (*an encoder for encoding*; *a scrambler for manipulating*). *See* Exhibit K (indicating the inclusion of "Packet level QoS classification rules" and "DiffServ DSCP marking"); Exhibit L (noting "Diffserv relies on a mechanism to *classify* and *mark* packets as belonging to a specific class"); *see also* Exhibit T (advertising the Accused Products' incorporation of cFosSpeed technology); Exhibit O; Exhibit U (explaining that cFosSpeed technology incorporated in some or all of the Accused Products "can label each packet with a certain value (called Differentiated Services Code Point, DSCP) and that value is stored inside of the packet"). Defendant's Accused Products transmit data (*a transmitter for transmitting*). *See* Exhibit J at 6 (advertising the router's four separate transmitting antennae).

129. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '506 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '506 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are

for use in systems that infringe the '506 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '506 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig*., 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc*., No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (*See* Exhibit D.) Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '506 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '506 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '506 Patent under 35 U.S.C. § 271.

130.  Defendant's acts of infringement of the '506 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the

'506 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

131.  On information and belief, the infringement of the '506 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '506 Patent, including but not limited to at least one or more of the following:

    a.    In the course of its due diligence and freedom to operate analysis;

    b.    Due diligence in relation to its prior litigation with Blue Spike; and

    c.    The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '506 Patent by operation of law.

## COUNT 15:
## INFRINGEMENT OF U.S. PATENT 8,265,278

132.  Blue Spike incorporates by reference the allegations in the paragraphs above.

133.  The '278 Patent is valid, enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

134.  Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '278 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

135.  Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '278 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '278 Patent. Specifically, Defendant imports the Accused Devices into the United

States; has partnered with numerous resellers to offer for sale and sell the Accused Devices in the United States, in numerous stores and websites; Defendant generates revenue from sales of the Accused Products to U.S. customers in said stores and via said websites (*see*, *e.g.*, Exhibits A, B, & C; *see also* Exhibit D, listing Best Buy USA, OfficeMax, Staples USA, Costco Wholesale, Microsoft, Office Depot, Walmart, and Future Shop as U.S. retail outlets); and has attended trade shows in the United States where it has demonstrated the Accused Products (*see*, *e.g.*, Exhibit H).

136.    The Accused Products infringe claims of the '278 Patent, such as Claim 1 which teaches

> A method comprising:
> receiving a digital signal in a system including at least one processor;
> selecting, using said at least one processor, at least one signal characteristic of the digital signal;
> manipulating, using said at least one processor, the at least one signal characteristic to degrade the digital signal;
> associating, using said at least one processor, at least one digital watermark with the degraded digital signal.

Defendant's Accused Products transmit and receive data (*receiving a digital signal*). *See* Exhibit J at 6 (advertising the router's four separate transmitting antennae). The Accused Products analyze packets and determine where the watermark will be placed. (*selecting at least one signal characteristic*). *See* Exhibit K at 77 ("This screen creates a traffic class rule to classify the upstream traffic, assign queuing priority and optionally overwrite the IP header DSCP byte."). The Accused Products will promote or degrade a packet's priority based on its signal characteristics. *See* Exhibit K; Exhibit T. The Accused Products generate a watermark identifying a packet and place the watermark in the packet

(*associating the watermark with the degraded signal*). *See* Exhibit K (indicating the inclusion of "Packet level QoS classification rules" and "DiffServ DSCP marking"); Exhibit L (noting "Diffserv relies on a mechanism to *classify* and *mark* packets as belonging to a specific class"); *see also* Exhibit T (advertising the Accused Products' incorporation of cFosSpeed technology); Exhibit O; Exhibit U (explaining that cFosSpeed technology incorporated in some or all of the Accused Products "can label each packet with a certain value (called Differentiated Services Code Point, DSCP) and that value is stored inside of the packet").

137. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '278 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '278 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '278 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '278 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig*., 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc*., No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of

its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (*See* Exhibit D.) Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '278 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '278 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '278 Patent under 35 U.S.C. § 271.

138.  Defendant's acts of infringement of the '278 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '278 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

139.  On information and belief, the infringement of the '278 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '278 Patent, including but not limited to at least one or more of the following:

    a.    In the course of its due diligence and freedom to operate analysis;

    b.    Due diligence in relation to its prior litigation with Blue Spike; and

    c.    The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '278 Patent by operation of law.

## COUNT 16:
## INFRINGEMENT OF U.S. PATENT 7,159,116

140.   Blue Spike incorporates by reference the allegations in the paragraphs above.

141.   The '116 Patent is valid, enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

142.   Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '116 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

143.   Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '116 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '116 Patent. Specifically, Defendant imports the Accused Devices into the United States; has partnered with numerous resellers to offer for sale and sell the Accused Devices in the United States, in numerous stores and websites; Defendant generates revenue from sales of the Accused Products to U.S. customers in said stores and via said websites (*see*, *e.g.*, Exhibits A, B, & C; *see also* Exhibit D, listing Best Buy USA, OfficeMax, Staples USA, Costco Wholesale, Microsoft, Office Depot, Walmart, and Future Shop as U.S. retail outlets); and has attended trade shows in the United States where it has demonstrated the Accused Products (*see*, *e.g.*, Exhibit H).

144.     The Accused Products infringe claims of the '116 Patent, such as Claim 14 which

teaches

> A device for conducting a trusted transaction between at least two parties who have agreed to transact, comprising:
>> means for uniquely identifying information selected from the group consisting of a unique identification of one of the parties, a unique identification of the transaction, a unique identification of value added information to be transacted, a unique identification of a value adding component;
>> a steganographic cipher for generating said unique identification information, wherein the steganographic cipher is governed by at least the following elements: a predetermined key, a predetermined message, and a predetermined carrier signal; and
>> a means for verifying an agreement to transact between the parties.

Defendant's Accused Products are designed to allow transactions between active

connections only ("SPI" or "Stateful Packet Inspection") (*a device for conducting a*

*trusted transaction between at least two parties*; *a means for verifying an agreement to*

*transact*). *See* Exhibit K at 123 (noting "[SPI] [r]efers to an architecture, where the

firewall keeps track of packets on each connection traversing all its interfaces and makes

sure they are valid"); Exhibit V. The Accused Devices are also designed to identify

unique information associated with a given packet, such as a MAC address or

transmission port. *See* Exhibit W. Before transmitting data, the Accused Products

generate a watermark identifying a packet and place the watermark in the packet (*a*

*steganographic cipher for generating said unique identification information*). *See* Exhibit

K (indicating the inclusion of "Packet level QoS classification rules" and "DiffServ

DSCP marking"); Exhibit L (noting "Diffserv relies on a mechanism to *classify* and *mark*

packets as belonging to a specific class"); *see also* Exhibit T (advertising the Accused Products' incorporation of cFosSpeed technology); Exhibit O; Exhibit U (explaining that cFosSpeed technology incorporated in some or all of the Accused Products "can label each packet with a certain value (called Differentiated Services Code Point, DSCP) and that value is stored inside of the packet").

145. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '116 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '116 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '116 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '116 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig*., 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc*., No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (*See* Exhibit D.) Those whom Defendant induces to infringe and/or to whose infringement Defendant

contributes are the end users of the Accused Products. Defendant had knowledge of the '116 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '116 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '116 Patent under 35 U.S.C. § 271.

146. Defendant's acts of infringement of the '116 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '116 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

147. On information and belief, the infringement of the '116 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '116 Patent, including but not limited to at least one or more of the following:

 a. In the course of its due diligence and freedom to operate analysis;

 b. Due diligence in relation to its prior litigation with Blue Spike; and

 c. The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '116 Patent by operation of law.

## COUNT 17:

## INFRINGEMENT OF U.S. PATENT 8,538,011

148.   Blue Spike incorporates by reference the allegations in the paragraphs above.

149.   The '011 Patent is valid, enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

150.   Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '011 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

151.   Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '011 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '011 Patent. Specifically, Defendant imports the Accused Devices into the United States; has partnered with numerous resellers to offer for sale and sell the Accused Devices in the United States, in numerous stores and websites; Defendant generates revenue from sales of the Accused Products to U.S. customers in said stores and via said websites (*see*, *e.g.*, Exhibits A, B, & C; *see also* Exhibit D, listing Best Buy USA, OfficeMax, Staples USA, Costco Wholesale, Microsoft, Office Depot, Walmart, and Future Shop as U.S. retail outlets); and has attended trade shows in the United States where it has demonstrated the Accused Products (*see*, *e.g.*, Exhibit H).

152.   The Accused Products infringe claims of the '011 Patent, such as Claim 36 which teaches

A device for conducting trusted transactions between at least two parties, comprising:

  a steganographic cipher;

  a controller for receiving input data or outputting output data; and

  at least one input/output connection,

  wherein the device has a device identification code stored in the device;

  a steganographically ciphered software application;

  wherein said steganographically ciphered software application has been subject to a steganographic cipher for serialization;

  wherein said device is configured to steganographically cipher both value-added information and at least one value-added component associated with said value-added information;

  wherein said steganographic cipher receives said output data, steganographically ciphers said output data using a key, to define steganographically ciphered output data, and transmits said steganographically ciphered output data to said at least one input/output connection.

Defendant's Accused Products are designed to allow transactions between active connections only ("SPI" or "Stateful Packet Inspection") (*a device for conducting trusted transactions between at least two parties*). *See* Exhibit K at 123 (noting "[SPI] [r]efers to an architecture, where the firewall keeps track of packets on each connection traversing all its interfaces and makes sure they are valid"); Exhibit V. The Accused Devices are also designed to identify unique information associated with a given packet, such as a MAC address (*the device has a device identification code stored in the device*) or transmission port. *See* Exhibit W. Before transmitting data, the Accused Products generate a watermark (*value-added information*) identifying a packet and place the watermark in the packet (*a steganographic cipher*). *See* Exhibit K (indicating the inclusion of "Packet level QoS classification rules" and "DiffServ DSCP marking"); Exhibit L (noting "Diffserv relies on

a mechanism to *classify* and *mark* packets as belonging to a specific class"); *see also* Exhibit T (advertising the Accused Products' incorporation of cFosSpeed technology); Exhibit O; Exhibit U (explaining that cFosSpeed technology incorporated in some or all of the Accused Products "can label each packet with a certain value (called Differentiated Services Code Point, DSCP) and that value is stored inside of the packet").

153. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '011 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '011 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '011 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '011 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (*See* Exhibit D.) Those whom Defendant induces to infringe and/or to whose infringement Defendant

contributes are the end users of the Accused Products. Defendant had knowledge of the '011 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '011 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '011 Patent under 35 U.S.C. § 271.

154. Defendant's acts of infringement of the '011 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '011 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

155. On information and belief, the infringement of the '011 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '011 Patent, including but not limited to at least one or more of the following:

    a.    In the course of its due diligence and freedom to operate analysis;

    b.    Due diligence in relation to its prior litigation with Blue Spike; and

    c.    The filing of this complaint.

On information and belief, Defendant has had at least had constructive notice of the '011 Patent by operation of law.

## REQUEST FOR RELIEF

Blue Spike incorporates each of the allegations in the paragraphs above and respectfully asks the Court to:

(a)  enter a judgment that Defendant has directly infringed, contributorily infringed, and/or induced infringement of one or more claims of each of the Patent-in-Suit;

(b)  enter a judgment awarding Blue Spike all damages adequate to compensate it for Defendant's direct infringement of, contributory infringement of, or inducement to infringe, the Patent-in-Suit, including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

(c)  enter a judgment awarding treble damages pursuant to 35 U.S.C. § 284 for Defendant's  willful infringement of one or more of the Patent-in-Suit;

(d)  issue a preliminary injunction and thereafter a permanent injunction enjoining and restraining Defendant, their directors, officers, agents, servants, employees, and those acting in privity or in concert with them, and their subsidiaries, divisions, successors, and assigns, from further acts of infringement, contributory infringement, or inducement of infringement of the Patents-in-Suit;

(e)  enter a judgment requiring Defendant to pay the costs of this action, including all disbursements, and attorneys' fees as provided by 35 U.S.C. § 285, together with prejudgment interest; and

(f)  award Blue Spike all other relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Blue Spike demands a jury trial on all issues that may be determined by a jury.

Respectfully submitted,

/s/ Randall T. Garteiser
Randall T. Garteiser
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com
**GARTEISER HONEA, PLLC**
119 W Ferguson St.
Tyler, Texas 75702
Tel/Fax: (888) 908-4400

Kirk J. Anderson
  California Bar No. 289043
**GARTEISER HONEA, PLLC**
44 North San Pedro Road
San Rafael, California 94903
Telephone: (415) 785-3762
Facsimile: (415) 785-3805

***Counsel for Blue Spike, LLC***

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on this date stamped above.

 /s/ Randall T. Garteiser     
Randall T. Garteiser
